JOSEPH M. PAIVA ET AL. *v.* VANECH HEIGHTS CONSTRUCTION COMPANY, INC., ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued May 6—decided June 23, 1970

514

*Joseph Protter*, with whom, on the brief, was *Michael J. Daly III*, for the appellants (defendants).

*Kevin T. Nixon*, with whom, on the brief, was *Michael C. Hagstrom*, for the appellees (plaintiffs).

SHAPIRO, J. This action arose out of the purchase of five single-family houses in the Quassuk Heights development in Woodbury, Connecticut, from the defendant corporation by five sets of husband and wife plaintiffs. The complaint was in two counts. The first alleged violations of certain restrictive covenants contained in the deeds to the plaintiffs from the defendant corporation and alleged nuisance in the construction and renting of apartment houses in the development in which the plaintiffs' homes were located. The second alleged that the plaintiffs were induced to purchase homes from the defendant corporation by the false representations of the defendants. The plaintiffs sought an injunction to restrain the defendants from building apartment houses in this development, and money damages.

The court found the issues with respect to the plaintiffs' claim for an injunction for the defendants. The case was submitted to the jury on the issues with respect to the plaintiffs' claim for money damages. The jury found these issues for the plaintiffs and returned a verdict for each set of plaintiffs. From this verdict and the judgment rendered thereon in favor of the plaintiffs, the defendants have appealed.

The defendants' basic claim of error is that the

trial court erred in failing to grant their motion for a directed verdict and in failing to grant their motion to set the verdict aside and to order a judgment for them, because the evidence was not sufficient to support a verdict for the plaintiffs. At the trial, the two principal issues were whether, as alleged in the fraud count, the purchase of the homes by the plaintiffs from the defendant corporation had been procured by the misrepresentations of the defendants and whether, as alleged in the breach of covenant count, the defendants had broken certain covenants contained in the deeds.

The defendants contend that the plaintiffs failed to sustain their burden of proof as to the fraud count, on the ground that there was no evidence of fraud and that the plaintiffs did not produce any evidence showing damages arising from the alleged fraud. The essential elements of an action in fraud are that a false representation was made as a statement of fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so act to his injury. *Helming* v. *Kashak,* 122 Conn. 641, 642, 191 A. 525; *Macri* v. *Torello,* 105 Conn. 631, 633, 136 A. 479; *Bradley* v. *Oviatt,* 86 Conn. 63, 67, 84 A. 321. Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfil the promise, is a false representation. *Flaherty* v. *Schettino,* 136 Conn. 222, 226, 70 A.2d 151; 37 Am. Jur. 2d, Fraud and Deceit, § 45.

Interrogatories were submitted to the jury, and their response establishes that the jury found the defendants liable on the fraud count. The jury

answered affirmatively an interrogatory as to whether the defendants had made "promises and representations to the plaintiffs knowing them to be false which induced the plaintiffs to buy their homes" from the defendants. The jury could reasonably have found that the defendants represented to the plaintiffs, before they signed contracts to purchase their homes, that only one-family homes would be built on the lots in the subdivision. In support of such a finding there was evidence that several plaintiffs were shown a written list of restrictive covenants, including one which specified that each subdivision lot was restricted to a one-family dwelling unit; that an advertising pamphlet of the defendants described one-family homes and made no mention of apartment houses; that a sign on one of the subdivision lots advertised only homes; and that a map in the defendants' sales office showed only one-family homes on the subdivision lots. The jury could also reasonably have found that the defendants knew that the aforementioned representations were false. In support of such a finding there was evidence from which a reasonable inference could be drawn that the defendants had conceived the idea of building apartment houses on some of the lots in the subdivision well before the plaintiffs entered into contracts with the defendants for the purchase of homes, and that, once the defendants decided to build apartment houses, they kept their intention to do so from the plaintiffs because they anticipated that the existence of such buildings would adversely affect the sales of one-family homes. And the jury could reasonably have found that the defendants' representations induced the plaintiffs to buy homes from the defendants. In support of such a finding there was evidence that the plaintiffs would not have

entered into contracts with the defendants for the purchase of homes if they had known that apartment houses would be built in the subdivision, and there was evidence that, although the list of restrictive covenants contained a provision allowing the defendants to modify or alter these covenants, the defendants did not indicate any intention to alter or modify the one-family dwelling provision.

The jury also answered in the affirmative an interrogatory as to whether "the plaintiffs suffered damages as a result" of false representations and promises by the defendants. The plaintiffs claimed by way of damages a diminution in the market value of their homes because of the erection of apartment houses. In support of this claim the plaintiffs offered the testimony and the detailed written report of a real estate expert. Although from the very nature of the situation the amount of loss could not be proved with exactitude, the evidence afforded a basis for a reasonable estimate by the jury of that amount. See *Hedderman* v. *Robert Hall of Waterbury, Inc.,* 145 Conn. 410, 414, 144 A.2d 60; *Ball* v. *T. J. Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855.

The defendants also contend that the plaintiffs failed to sustain their burden of proof as to the count relating to the breach of the restrictive covenant. The jury affirmatively answered interrogatories as to whether the plaintiffs purchased their homes "in reliance on the express and/or implied covenants, easements and restrictions alleged in the plaintiffs' deeds," and as to whether the plaintiffs' premises had been depreciated in value as the result of the breach of these covenants, easements and restrictions by the defendants. The answers to these interrogatories establish that the defendants

were found liable by the jury on the breach of contract count as well as the fraud count. Where, as here, the jury returned a verdict for the plaintiffs and the jury's answers to interrogatories establish that the defendants were found liable upon both counts, if the verdict can be supported upon either, the judgment for the plaintiffs cannot be disturbed. *McGuire* v. *Hartford Buick Co.,* 131 Conn. 417, 418, 40 A.2d 269; *Knight Realty Co.* v. *Caserta,* 126 Conn. 162, 168, 10 A.2d 597. Since the evidence was sufficient to support a verdict for the plaintiffs on the fraud count, we need not consider the defendants' claim that the evidence was not sufficient to sustain a verdict on the breach of contract count.

The defendants' next claim of error is that the court erred in refusing to accept the defendants' requests to charge. After counsel had completed their arguments, but prior to the court's charge to the jury, the defendants' counsel presented his written requests to charge, and the court refused to accept them. Section 251 of the Practice Book requires that requests to charge must be filed in writing before the beginning of the arguments. Counsel stated to the court that the late filing of his requests was due to the fact that he had been "working day and night on this case preparing from one night to the next the questions and the cross-examination for the following day, and getting back to the office after . . . [his] secretary . . . left . . . and . . . [he] further felt that . . . [his] motion for a directed verdict would be granted . . . ." The defendants, however, have not pointed to anything in the record which indicates that counsel asked for a brief delay before the commencement of argument in order to prepare his requests. Nor have the defendants pointed to anything in the record to show that the court would

have had an opportunity to give proper consideration to the requests, which were lengthy and extensive, before charging the jury, and to show that consideration of the requests would not have necessitated a material delay in the progress of the trial. See *Lukovits* v. *Palmer,* 126 Conn. 320, 323, 10 A.2d 761. Therefore, upon the record before us, we cannot hold that the court's refusal to accept the late requests constituted an abuse of its discretion.

The defendants also make three claims of error which relate to the court's charge to the jury. The first in essence is that the court's instructions to the jury did not adequately guide the jury in finding damages. The finding discloses that the court charged the jury fully and accurately as to the measure of damages and the evidence to be considered in assessing damages. See *Michaud* v. *Gagne,* 155 Conn. 406, 412, 232 A.2d 326; *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664; *Warner* v. *McLay,* 92 Conn. 427, 429, 103 A. 113. Therefore, the errors assigned with reference to the court's instructions to the jury on the issue of damages are without merit.

The defendants' second claim is that the court erred in instructing the jury to disregard the defendants' special defense of laches. To establish laches or unreasonable delay in bringing suit, one must prove that there was an inexcusable delay in advancing the claim against him and that the delay has unduly prejudiced him. *Robinson* v. *Myers,* 156 Conn. 510, 519, 244 A.2d 385; *Sarner* v. *Fox Hill, Inc.,* 151 Conn. 437, 444, 199 A.2d 6; *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 685, 116 A.2d 906. The court instructed the jury to disregard the defendants' defense of laches on the ground that as a matter of law laches was not a proper defense in

this case. The claims of proof indicate that there was delay but that it was not inexcusable and did not unduly prejudice the defendants. Therefore, the court's instructions in this regard were not erroneous.

The defendants' third claim relates to the issue of the alleged breach by the defendants of certain restrictive covenants contained in the plaintiffs' deeds. Since answers by the jury to interrogatories establish that the jury found the defendants liable on the fraud count as well as the breach of covenant count, and since there was no error in the charge as to the fraud count, any error in the charge as to the breach of covenant issue would be immaterial. Therefore we need not consider the correctness of the charge relating to this issue. See *Levett* v. *Etkind,* 158 Conn. 567, 577, 265 A.2d 70; *McGuire* v. *Hartford Buick Co.,* supra.

The defendants' final claims of error all relate to rulings on evidence. We have carefully reviewed each claim separately, and the only rulings which warrant discussion are those which resulted in the admission over the defendants' objections of evidence as to what the defendant Nicholas Vanech told the plaintiff Joseph M. Paiva concerning the purpose and effect of certain restrictive covenants contained in the deed from the defendant corporation to Paiva and his wife, and of evidence as to what Paiva's understanding was regarding the purpose and effect of these covenants. The defendants objected to the admission of this evidence on the ground that it violated the parol evidence rule because it tended to change the terms of the written agreement of the parties with respect to the restrictive covenants. Paiva claimed that he had been induced to enter into a contract with the defendant corporation for

the purchase of a home by misrepresentations of the defendants, one of which was that no apartment houses would be built in the development where the home he purchased was situated, and the evidence in question was offered for the purpose of proving this contention. The parol evidence rule has no application where there has been fraud in the inducement of the contract, and parol evidence is ordinarily admissible to prove fraudulent misrepresentations. *Presta* v. *Monnier,* 145 Conn. 694, 700, 146 A.2d 404; *Kiss* v. *Kahm,* 132 Conn. 593, 595, 46 A.2d 337; *McLaughlin* v. *Thomas,* 86 Conn. 252, 256, 257, 85 A. 370. Since the evidence in question was offered to prove such misrepresentations, it was properly admissible notwithstanding the objection of the defendants that it tended to change the terms of a written agreement.

There is no error.

In this opinion the other judges concurred.